Mason, &c. *v.* Caldwell.

PARIS MASON, for the use of Sarah Mason, Guardian, &c. appellant, *v.* JOHN R. CALDWELL, appellee.

*Appeal from Jersey.*

A bond for the conveyance of real estate contained the following clause : "But should the said John R. Caldwell, or his assignee, fail to pay the said sum of money specified in said notes, within ten days after the same become due, he hereby forfeits all claim to said lots, and all moneys paid thereon, and this bond, in such event, shall be void, both in law and equity, and the title to said lots shall continue in the original proprietor as if no sale had been made :" *Held,* that it was the undoubted intention of both parties, when they inserted the clause, to provide a penalty to insure a prompt performance by the purchaser.

If a person professing to act on behalf of another, but without authority, enters into a contract, which, for the want of such authority, would render the professed agent personally liable, such contract may be adopted by the principal while it is still in force as between the professed agent and the other party.

If an administrator or guardian, in his representative capacity, make a contract or covenant which he has no right to make, and which is not binding upon the estate or ward, he is personally bound to make it good.

A bond for the conveyance of real estate contained the following clause : "Then the said Sarah Mason, guardian as aforesaid, by the said Paris, her attorney as aforesaid, covenants for herself and her successor, to make and execute a good and sufficient deed, with warranty," &c. After the ward became of lawful age, and had married, she, with her husband and former guardian, executed a deed of warranty to the obligee, who refused to make his payments and to receive the deed: *Held,* that although the bond was void so far as the ward was concerned, it was binding on those who made it; by making and tendering the deed, the bond was adopted by the ward after becoming of lawful age and thereby discharged the guardian and her attorney; and that the obligee, by neglecting to repudiate and deliver up the bond, and demand his notes, prior to such adoption, lost his claim to indemnity against the agent: *Held,* further, that the terms of the bond were complied with by the making and tender of the deed.

ASSUMPSIT, in the Jersey Circuit Court, brought by the appellant against the appellee, and heard before the Hon. Samuel D. Lockwood, at the September term, 1844.

In September, 1843, the defendant, by his attorneys, filed six pleas, of which the following is the substance :

1. The defendant pleaded that the only consideration of

the notes was a sale of certain town lots in Grafton, as specified in a certain title bond, and the delivery of said bond, to the defendant, by the said plaintiff, which bond is as follows :

"Know all men by these presents, that I, Sarah Mason, guardian of Maria Mason, infant heir of James Mason, deceased, by Paris Mason, my attorney, by deed bearing date the 12th day of May, 1835, am held and firmly bound unto John R. Caldwell of the county of Greene, and State of Illinois, in the penal sum of eight hundred and fifty four dollars —the payment of which, well and truly to be made, I bind myself and my successor, as such guardian, firmly by these presents.

The condition of the above bond is such, that whereas the said John R. Caldwell has this day purchased at public sale, lots No's. 9 and 11, in block 37, (thirty seven) in the town of Grafton, county of Greene, and State of Illinois, for the sum of four hundred and twenty seven dollars—and the said John R. Caldwell having executed his notes for the sum of three hundred and eighty four 30-100 dollars, bearing even date herewith, and payable to Paris Mason, for the use of Sarah Mason, guardian of said infant heir, one and two years from the date thereof: Now, therefore, if the said John R. Caldwell shall pay, or cause to be paid, said sum of money specified in said notes according to the tenor and effect thereof—then the said Sarah Mason, guardian as aforesaid, by the said Paris, her attorney as aforesaid, covenants, for herself and her successor, to make and execute a good and sufficient deed, with warranty of the above described lots of land, to the said John R. Caldwell, in pursuance of and according to the provisions of an Act passed by the Legislature of the State of Illinois, entitled, 'An Act for the benefit of the infant heir of James Mason, deceased,' approved January 20, 1835, and January 16, 1836. But should the said John R. Caldwell or his assignee, fail to pay said sum of money specified in said notes, within ten days after the same become due, he hereby forfeits all claim to said

lots, and all moneys paid thereon; and this bond, in such event, shall be void, both in law and equity, and the title to said lots shall continue in the original proprietor as if no sale had been made. In testimony whereof, I have hereunto set my hand and seal, by Paris Mason, my attorney, this 27th day of May, 1836.

Sarah Mason, [L. s.]<br>
by Paris Mason, her attorney.

The defendant then averred that said Acts of the Legislature had not been complied with, inasmuch as the said said guardian did not execute bonds and obtain the sanction of the Judge of Probate in regard to said sale—that she had no power to convey—that she had no title; and that the consideration of said notes had failed, &c.

2. The defendant pleaded that the consideration of the notes was the same as before and none other; that defendant failed to pay the notes and interest, according to the stipulation in the bond, whereby he forfeited all claim to the said lots, and said bond became void, and title re-vested in the original proprietor, and that said Sarah Mason, or Paris Mason, had no title or authority in law to sell the same; so that the consideration had wholly failed.

3. The defendant pleaded that the consideration of the notes was the same as before and none other; that Paris Mason acted as pretended attorney for Sarah Mason, guardian of Martha Maria Mason, an infant under the age of twenty one years; that said sale by the said Paris was without authority of law and void, and not binding upon the rights and responsibilities of the said Martha Maria; that Paris Mason had no title; so that the consideration of said notes had wholly failed.

4. The defendant pleaded that the consideration of said notes was the same as before and none other; that said Acts of the Legislature had not been complied with, inasmuch as the Judge of Probate of Madison county had never made any order, divesting the said Martha Maria Mason of her title of, in, and to, the said lots of land; that said Sarah Mason and

Paris Mason had no title; so that the consideration, &c. had wholly failed.

5. The defendant pleaded that the consideration of said notes was the same as before ; that said sale was made by Paris Mason, agent, &c.; that, at the time of said sale, said Paris agreed with the said defendant that if defendant bought said lots, and would execute his note for the same, and pay ten per cent. of the purchase money down, that defendant should have the option of declining to pay for said lots, and the said sale become void by the failure of defendant to pay said notes and interest, &c.; that defendant, relying upon said agreement, agreed to purchase, &c. and did pay down the ten per cent. and did execute his notes, &c.; that, being desirous of surrendering his interest, &c. he wholly failed to pay said notes, whereby he forfeited all claim to said lots and the title, and the same continued in the said Martha Maria ; that he never had possession of said lots ; that the said Paris Mason and Sarah Mason had no title ; so that the consideration wholly failed.

6. The defendant pleaded that the consideration of said notes was the same as before; that Paris Mason, making said sale, pretended to be attorney in fact for the said Sarah Mason, by deed for that purpose ; that there was no such power of attorney, so that the sale was entirely void, and not binding upon said Sarah Mason or upon Martha Maria ; that the said Paris Mason had no title ; so the consideration of said notes had wholly failed.

1. To the first of said pleas, the plaintiff replied, that, soon after the execution of said notes and bond, the said Martha Maria Mason become of full and lawful age, and intermarried with one William H. Allen ; and that, after the maturity of said notes, and after the said marriage, but before the commencement of this suit, and before any demand for a deed, or tender of the money expressed in the said notes, or offer to pay the same, or any part thereof, viz : on the 10th day of May, 1842, the said Wm. H. Allen, and Martha Maria, his wife, and the said Sarah Mason, executed

a good and sufficient warranty deed to the said defendant for the said lots, and caused the same to be duly tendered to the said defendant, viz : on the said 10th May, at, &c.; that they always were and still are ready and willing to make and deliver such deed, upon payment being made, &c. But that the defendant then and there and at all times, refused to pay said notes and receive said deed, whereby there would have been conveyed to him an indefeasible estate in said lots, in fee simple absolute. All which, &c. Wherefore, &c.

2. To the second plea, plaintiff filed a general demurrer.

3. To the third plea, the plaintiff replied that said sale was made by the said Paris Mason, as agent of the said Sarah Mason, under a power of attorney supposed to be ample and sufficient to authorize the plaintiff to act in that behalf; and that subsequent to said sale, and before the maturity of said notes, the said Sarah fully adopted and confirmed all the acts of her said agent ; that she had been at all times ready, and still was ready and willing to fulfil all the stipulations of said bond, so far as the same depended on her, upon the defendant paying the said notes according to their terms, &c. Wherefore &c.

4. To the fourth plea, the plaintiff filed a general demurrer.

5. To the fifth plea, the plaintiff also filed a general demurrer.

6. To the sixth plea, the plaintiff replied in the language of the replication to the third plea.

The defendant joined in the demurrer to the second, fourth and fifth pleas, and demurred to the replications to the first, third and sixth pleas, and the plaintiff joined in the defendant's demurrer.

At a subsequent term, the defendant, on leave, filed a plea of *non assumpsit* to the common counts of the plaintiff's declaration.

The Court, *pro forma,* sustained all the demurrers ; and a general judgment was rendered for the defendant.

*H. W. Billings & L. B. Parsons, Jr.* for the appellant.

1. The replication to the first plea is good. It avers that a good deed was tendered to Caldwell, and a demand made for the money, and that he refused to pay the notes or take the deed. *Hunt* v. *Livermore,* 5 Pick. 397; *Duncan* v. *Charles,* 4 Scam. 564; *Manning* v. *Brown,* 1 Fairf. 51; *McCampbell* v. *Miller,* 1 Bibb, 454; *Saunders* v. *Beall,* 4 do. 342; *Couch* v. *Ingersoll,* 2 Pick. 300; *Kane* v. *Hood,* 13 do. 283; *Howland* v. *Leach,* 11 do. 155; *Mason* v. *Chambers,* 4 Littell, 253; *Canfield* v. *Wescott,* 5 Cowen, 271.

2. A bond conditioned to convey land by a good and and sufficient deed of warranty on payment of notes by the obligee to the obligor, is performed by a deed regularly executed in proper form by a grantor who is seized. *Aiken* v. *Sanford,* 5 Mass. 499; *Finney* v. *Ashley,* 15 Pick. 552; *Hogins* v. *Arnold,* ib. 262; *Waggoner* v. *Monroe,* 3 Monroe, 556; 1 U. S. Dig. 683, § 213; *Howland* v. *Leach,* 11 Pick. 155.

3. A penalty is not to excuse a party, but to compel him to perform his contract. *Brown* v. *Bellows,* 4 Pick. 196; *Ensign* v. *Kellogg,* ib. 5; *Manning* v. *Brown,* 1 Fairf. 51; *Barbour's Ex'rs* v. *Brookie,* 3 J. J. Marsh. 512; Sugden on Vendors, bottom page, 215.

*D. A. Smith,* for the appellee.

I. The consideration of Caldwell's note, was the conveyance by Mrs. Mason of the title in fee, with warranty of the lots, pursuant to the Act of the Legislature; and not that she would, after a long lapse of time, (the Act of the Legislature not having been complied with,) and when the property might greatly have depreciated in value, procure her daughter (who could not warrant the fee because she was a married woman,) to convey, and to harass him with a void and ruinous bargain. This Court has decided the first plea to be good, and that the sale was void, because Mrs. M. did not strictly pursue the power with which she was invested by the statute, authorizing her to sell the

property. *Mason* v. *Wait*, 4 Scam. 127. The objection to the replication to this plea is, that in effect it allows the affirmance and specific execution of a void contract after a long lapse of time, in behalf of one who is not a party to the record, and in no way bound by the contract. This would not be allowed in a Court of Chancery, because of change in the circumstances of the parties,—depreciation in the value of property, &c.; but above all, because of utter want of mutuality in the obligations of the contract. "As a general rule, it is well settled, that to enable either party to compel a specific execution, the contract must be mutually binding on each." See Newland on Contracts, 154, and the authorities there cited; 2 A. K. Marsh. 346. "If an infant enter into a contract for the sale or purchase of an estate, he cannot enforce it in Equity, for the remedy is not mutual." *Flight* v. *Balland*, 4 Russ. 298.

II. This Court, in the case of *Mason* v. *Wait*, did not decide upon the principle involved in the second and fifth pleas. It is contended by the appellant's counsel, that the provision in the title bond relied upon in these pleas is in the nature of a mere penalty or forfeiture, designed to secure punctuality on the part of the vendee. It is insisted, that this is a clear case of the rescission of a contract, (it having been by this Court decided to be void,) by its very terms, if it be legally in the power of the parties to agree in their contract for such rescission. No case like this is to be found in the books. Could the vendor, under the terms of this bond, be compelled to execute this contract specifically, if he resisted it? Surely not, if the parties were to make, and the Court to construe the contract according to its plain and obvious meaning, and the intention of the parties. If, however, this stipulation amounted only to an ordinary penalty or forfeiture, it could only be waived at the election of a vendor, having title at the time of his election, which cannot be pretended in this case in behalf of Mrs. Mason, or the plaintiff. The title was in Mrs. Mason for several years after the maturity of the notes for the purchase money, and

it may be well argued, that if the property had appreciated in value, we should never have been called upon to settle any perplexing points in this case.

III. The third, fourth and sixth pleas have been decided to be good in the case of *Mason* v. *Wait. Stare decisis*.

*B. S. Edwards*, for the appellant, in conclusion, relied upon the following points and authorities :

1. The covenants in this case are not dependent, but mutual and independent. The payments to be made by defendant, being to be made by instalments, one of which falling due before the plaintiff was under obligation to convey, and the defendant having failed to make that payment, he cannot set up the failure on the part of the plaintiff to perform his part of the obligation as a defence. *Manning* v. *Brown*, 1 Fairf. 49; *Champion* v. *White*, 5 Cowen, 509; *Duncan* v. *Charles*, 4 Scam. 561; *Craddock* v. *Aldridge*, 2 Bibb, 15; *Mason* v. *Chambers*, 4 Littell, 253 *et seq*. The case of *Gregory* v. *Scott*, 4 Scam. 392, cited by defendant's counsel, does not conflict with this position, and if it should be so deemed, it is reversed by the subsequent case of *Duncan* v. *Charles*.

2. The contract cannot be so construed, as to give the defendant the right to avoid the contract by his failure to pay his notes. So to construe the avoiding clause would destroy the mutuality of the contract, and such could not have been the understanding of the parties. *Manning* v. *Brown*, 1 Fairf. 49; *Burnam's Ex.* v. *Brookie*, 3 J. J. Marsh. 511; *Canfield* v. *Westcott*, 5 Cowen, 270; and other cases there cited. The defendant has done nothing affirmatively to show his intention to avoid this contract.

3. The replications in this case are good. It was not necessary for the plaintiffs to have tendered a deed, at the maturity of the last note. See authorities before cited, and, also, *Johns* v. *Smock*, Coxe, 106, cited in 1 U. S. Dig. 679, § 120; 3 Stew. 361. The bond in this case was an obligatory contract on the part of Sarah Mason, or of Paris Mason, or both. Acting or pretending to act in the right of another,

and failing to bind their principal, the agent would be personally responsible, and thus, whether guardian, administrator or any other agent. *Sumner* v. *Williams*, 8 Mass. 162; *Whiting* v. *Dewey*, 15 Pick. 428.

4. The Court will look beyond the technical words of the contract to see the intent of the parties. Whose title did the defendant contract for? I answer, the title of Martha Maria Mason, and the replication tendering him her title, so as to rest in him an indefeasible fee simple estate, he has no reason to complain, and neither the law nor common honesty would admit his pretended defence. The authorities cited by Mr. Billings are conclusive upon this point.

The Opinion of the Court was delivered by

CATON, J. All of the questions presented in this record, have been already settled in this Court, except two, the first of which is presented by the demurrer to the second and fifth pleas, and the second by the demurrer to the first replication. The first question depends upon the proper construction to be given to the concluding clause of the bond set out in the pleas. That is as follows: "But should the said John R. Caldwell, or his assignee, fail to pay the said sum of money, specified in said notes, within ten days after the same became due, he hereby forfeits all claims to said lots and all the moneys paid thereon, and this bond, in such event, shall be void, both in law and equity, and the title to said lots shall continue in the original proprietor, as if no sale had been made." The defendant contends, that he can take advantage of this clause, and because he did not pay the money as he had agreed to do, he is exonerated from paying it at all. It is argued, that because the obligee, in the event of non-payment, may treat the bond as determined, mutuality requires that the obligor should have the same privilege. This argument refutes itself. It is as much a *felo de se*, as it would make the bond. To admit the defendant's position, is to leave everything in his own hands. It allows him to defeat, or make the bond operative, as may best subserve his interest, without any discretion on the part

of the obligee.   It converts the bond into a naked proposi-
tion absolutely binding on the seller, but which the pur-
chaser may accept or reject by the payment or non-payment
of the money.   By thus putting the entire control in the
hands of the latter, all mutuality is destroyed.   It was the
undoubted intention of both parties, when they inserted this
clause, to provide a penalty to insure a prompt performance
by the purchaser.   By performance he leaves no discretion
in the hands of the obligee, but has a right to enforce the
bond, while, if he does not, he agrees to leave it optional
with the other party to avoid the contract or not.   Here
was a real mutuality; for the purchaser had the first discre-
tion, and if he placed himself in the power of the party, it
was by his own voluntary neglect to pay the money, as he
had bound himself to do, and it was but a just penalty for
violating his obligation.   But this is not a case of first im-
pression.   This precise question has been fully settled by a
number of decisions in other States.   The first case to which
we shall refer, is that of *Canfield* v. *Westcott*, 5 Cowen, 270;
and two other cases are given in a note to that, where the
same Court had held the same rule; in the last of which,
( *Church* v. *Ayres*,) almost the identical words are used which
are found in the avoiding clause of this bond: "Otherwise,
these presents to be void both at law and in equity."   In
all of these cases the Court held that the avoiding clause
was inserted for the benefit of the obligee, and that the obli-
gor could not take advantage of his own neglect in the non-
payment of the consideration.   The same construction was
given to a similar clause in the case of *Manning* v. *Brown*,
1 Fairf. 49.   The same principle was sustained in Kentucky,
in *Barbour's Ex'rs* v. *Brookie*, 3 J. J. Marsh. 511.   But it
hardly requires authority to support what is so easily dem-
onstrated by reason.

The next question is perhaps of greater importance, and
it is certainly of more difficult solution.   This is presented
by the demurrer to the replication.   That replication admits
that neither the plaintiff, nor Sarah Mason, by whose appoint-
ment he made the sale and received the notes, had any

authority to sell the premises, the fee of which was in Mrs. Allen, who was, at the time of the sale, a minor, and the ward of Mrs. Sarah Mason, and that as to the ward, the sale was absolutely void, and conferred upon the purchasers no right to the land whatever; but then it avers that soon after he notes were given, the ward became of age, and intermarried with Mr. Allen, and that afterwards, and soon after the maturity of the notes, and before the defendant demanded a deed, or tendered or offered to pay the money, Martha Maria, in whose behalf the sale was professedly made, and her husband and Sarah Mason, executed and tendered a deed for the lots to the defendant, which would have vested in him a perfect title, but that he refused to accept the same or pay the notes. This presents the question, whether a contract, which was not binding upon her at the time it was made, might be adopted by her after she became of age, and before it had been repudiated by the purchaser. If a person, professing to act on behalf of another, but without authority, enters into a contract which, for the want of such authority, would render the professed agent personally liable, such contract may be adopted by the principal while it is still in force as between the professed agent and the other party. *Doyle* v. *Teas*, 4 Scam. A person may as well become an agent by adoption as by original appointment, and by such adoption the responsibilities are shifted from the agent to the principal. A contract, however, which was absolutely void as to all parties, which conferred no rights, and created no liabilities of any sort, could not, I imagine, be adopted by any one so as to make it valid and binding. It then becomes important to inquire whether the agent, by whom this contract was made, but without authority, was personally responsible to the purchaser, and bound to make good whatever damages the purchaser might have sustained, because he was unable to get the title for which he contracted. I know of no reason why this contract should be taken out of the general rule, which compels an agent to make good his contract personally, when he contracts without authority. It makes no difference that Mrs. Mason was

professing to act as guardian under a legal appointment. If an administrator or guardian, in his representative capacity, makes a contract or covenent which he has no right to make, and which is not binding upon the estate or ward, he is bound personally to make it good.

In *Sumner* v. *Williams*, 8 Mass. 162, as administrators, the parties executed a deed, which was signed and sealed by them in that capacity, and as administrators they covenanted to warrant and defend the premises. They were held liable in their individual capacity, for the reason that they had no authority to bind their intestate's estate by such a covenant. And in *Whiting* v. *Dewey*, 15 Pick. 428, guardians conveyed lands in that capacity, and as guardians, they covenanted "that Benedict Dewey, deceased, died seized of the premises, and that they, as guardians in right of the said minor, were lawfully seized of the premises." And they were held individually liable on this covenant for the same reason as that given in the other case. The Court said, that "where parties contract en *auter droit*, and fail to bind their principals, they are to be held personally responsible."

It may be considered as settled, then, that although the sale was void so far as the ward was concerned, it was still binding upon those who made the contract, to whom the purchaser had a right to look for any damages which he might sustain on account of his inability to procure the title. This was the condition of the contract, and the rights and liabilities of the parties, when the acts of the guardian and her attorney were adopted, and the deed tendered. Previous to that time, the purchaser had an undoubted right to repudiate, and deliver up the contract, and demand his notes, but by doing so he would have lost his claim to indemnity, against the agent. This he did not do. If we could look beyond this replication, and notice the avoiding clause, which is set out in the pleas, we see that both had the right to avoid the contract, the plaintiff on account of the non-payment of the money, and the defendant, for want of authority in the plaintiff to make the sale. But till this right was exercised

by some affirmative act, the contract was still in force. It was defeasable, but not destroyed. Up to the time the deed was tendered, the defendant retained the right to call upon the plaintiff to make good the contract personally, and while he retained that right, he could not complain, if the sale was adopted by the principal after she became competent to affirm the act, and thus secure to the purchaser the full benefit of his contract.

It would hardly be denied that the tender of a deed would have been a good plea to an action by the purchaser against the agent, charging his liability upon the want of authority to bind the ward; and if such a tender would have been a good plea to an action based upon such want of authority, it ought to be a good replication, where the same want of authority is relied upon as a defence. It is a matter of no moment to the purchaser whether he gets his title from the guardian as he had expected, or directly from the ward after she became of age, so as the title was good. If there was any difference, the deed which was tendered him was better than he could have expected from the guardian, for it contains a covenant of warranty, binding upon the ward and her husband, whereas the guardian could not so have bound her. The substance of the purchase was for the title, and not that the title should come through a particular channel. In 1 U. S. Dig. 683, § 213, it is said: "A. covenanted to convey a tract of land to B. by a good warranty deed in fee simple. A. had only a life estate at the time, and he afterwards conveyed by deed with general warranty, all his interest in said tract to his son; and his son and other children, in whom the fee was vested, conveyed to B.: *Held*, that on tender to B. of such title, A. was entitled to the purchase money of B." *De Choumont* v. *Forsyth*, 2 Penn. 507, is referred to. We have not access to the reported case, and therefore should be unwilling to rely upon it with much confidence as an authority, if the principle asserted were novel or in any way unreasonable. But it comports with what we understand to be familiar principles. Even Equity may enforce the specific performance of a contract, for a sale of

land, although he has no title at the time of the sale or even at the time of filing the bill, so as he can make a good title at the time of the decree.

He ought not to complain if he gets that for which he contracted, and in as good a condition as he had a right to expect. We are of opinion that the replication was a good one, and that the *pro forma* decision sustaining the demurrer to it will have to be reversed. We have already seen that the demurrer was properly sustained to the second and fifth pleas.

The judgment is reversed and the cause remanded.

*Judgment reversed.*