# GRIFFITH *v.* STEWART.

WILLS; EXECUTORS AND ADMINISTRATORS; COMITY; SPECIFIC PERFORMANCE; CONTRACTS; RATIFICATION; WAIVER; EQUITY.

1. Where a will directs the executor to sell the real estate of the testator and distribute the proceeds in a certain manner, the legal title vests in the executor, and, having the power to sell, he has, by implication, the power to convey. (Following *Rathbone* v. *Hamilton*, 4 App. D. C. 475.

2. In a suit brought here by a Maryland executor to enforce specific performance of a contract made with his testator in that state concerning land there, the laws of that State must govern in ascertaining the rights of the parties.

3. In Maryland an executor has authority to bring suit to enforce the specific performance of a contract for the sale of real estate, made by his testator during his lifetime, without joining the heirs as parties complainant, and has authority to execute a conveyance that will pass the legal title to such real estate. (Construing sec. 81, article 93, Maryland Code, and citing sec. 327, D. C. Code, 31 Stat. at L. 1241, chap. 854.)

4. A suit for the specific performance of a contract made in Maryland and concerning land there is an action *in personam*, and is properly brought in this District, if the defendant resides here and personal service can be had here upon him.

5. A contract for the sale of land effects an equitable conversion of the land into personalty, and, if the vendor dies before execution of the contract, his right to the unpaid portion of the purchase money, as a chose in action, passes to his personal representative. Under such circumstances, after the execution of the contract, in equity, the vendor, and, on his death, his personal representative, holds the land as trustee for the purchaser; and the latter holds the purchase price as trustee for the vendor and his personal representative.

6. The ratification by the owner of land, by a separate instrument in writing, of a contract for its sale made by his attorney, has the same binding effect against the owner as his signature to the contract itself would have had, although the power of attorney, given by him to his attorney to sell, provided for his signing the contract itself,—especially where neither the owner, nor his representative, have made any effort to evade the contract, but seek to enforce it.

7. Where a contract for the sale of land provides that, if the balance of the purchase price shall not be paid within a prescribed time, the amount paid shall be forfeited and the contract shall become void, the vendor has the option either of declaring the contract forfeited upon the failure of the. vendee to pay the balance as agreed, or to enforce the contract specifically.

8. Where one party to a contract has been negligent in performing his part of a contract, he is estopped from coming into a court of equity when it is asked to specifically enforce the contract, and basing his defense upon contingencies that might have prevented the other party from keeping his agreement had he been called upon to do so.

9. Where the vendor of land died two days before the day fixed for consummation of the sale in the contract of sale, and the vendee made no tender of performance, and the executor of the vendor tendered performance within a reasonable time after obtaining authority to do so, the failure of each party to the contract to perform on the day fixed is a waiver by each of the default of the other, and the executor will be entitled to specific performance of the contract.

10. The vendee cannot defeat specific performance of a contract for the sale of land on the ground that he made the contract as agent of another, when he failed to disclose his agency until after the execution of the contract.

11. Where the lower court in a suit for specific performance passed a decree granting the relief prayed for by the bill, and, on a rehearing,

passed another decree vacating the first decree and dismissing the bill, on the ground alone of defect of parties complainant, the two decrees, when considered together, will be deemed a finding for the complainant on the facts.

No. 1774. Submitted February 5, 1908. Decided March 31, 1908.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia vacating a former decree for the complainant and dismissing a bill for specific performance of a contract for the sale of land.      *Reversed.*

The COURT in the opinion stated the facts as follows:

This suit was brought in the supreme court of the District of Columbia by the appellant, Lewis A. Griffith, plaintiff below, as executor of the estate of one Alfred W. Ball, against the appellee, William W. Stewart, for the specific performance of a contract. It appears that in June, 1903, the appellee, referred to hereafter as defendant, entered into a contract to purchase the farm of Ball situated in Prince George county, Maryland. The contract was executed on the part of Ball by plaintiff, Griffith, who was acting under a power of attorney from Ball appointing Griffith as his agent for the purpose of negotiating the sale of said land. The contract provided that $500 should be paid in cash on the purchase price, and the balance of one half of the purchase price should be paid on November 7, 1903. The remaining one half of the purchase price was to be paid in five equal annual instalments, with interest thereon at 6 per cent per annum. The contract provided that Ball should remain in possession until November 7, 1903, when a deed should be executed by him and delivered to defendant, and defendant should execute notes to be secured by a purchase mortgage on the land to Ball to secure the deferred payments. The $500 was paid on the signing of the contract, but defendant failed to make the payment due on November 7th.

On November 5th, two days before payment under the contract became due, Ball died, leaving a will in which the plain-

tiff was named as executor, and, by its terms, vested with full
and complete power over the entire estate of Ball, real, personal,
and mixed.    The will was duly presented for probate in the
probate court of Prince George county, Maryland.    The court
ordered plaintiff to carry out this contract, and, in compliance
with said order, plaintiff demanded performance of the same by
defendant, which was refused.    Upon such refusal, plaintiff ex-
ecuted a deed and tendered it to defendant, demanding a com-
pliance with the terms of the contract.    Defendant still refused
to carry out the terms of the agreement.    Plaintiff, as executor,
then instituted this suit to compel defendant to specifically per-
form the conditions of the contract.

At the conclusion of the trial, the court, on February 21,
1906, entered a decree in favor of plaintiff, in which the court
held, among other things, that the agreement in complainant's
bill, dated the 5th day of June, 1903, ought to be specifically
performed and be carried into execution; and, in accordance
with this finding, the court directed plaintiff to execute and de-
liver a deed to the defendant and the defendant to execute and
deliver the notes and a mortgage, as provided for in the contract.
On March 13, 1906, the court, upon a showing that defendant
refused to comply with the terms of the decree, entered judgment
against the defendant for the amount of the purchase price then
due, and appointed a trustee to receive the deed from plaintiff
and execute the notes and mortgage called for in the decree to
be executed by defendant.

On March 20, 1906, counsel for defendant filed a motion
to vacate the decree and for a new trial.    This motion was al-
lowed and a rehearing granted, upon which the court entered the
following decree:    "The decree heretofore entered in this cause
having been vacated, new testimony taken, and a rehearing had,
the court is of opinion that the heirs and devisees of Alfred W.
Ball are indispensable parties, and that the deed tendered by
the complainant was insufficient to pass the title, for which rea-
sons alone the former decree was erroneous, and the bill must
be dismissed.    It is by the court this 2d day of July, 1906,
adjudged, ordered, and decreed that the said bill be and the same

is dismissed with costs to be taxed by the clerk." From this decree plaintiff appealed to this court.

*Messrs. Kappler & Merillat* and *Mr. George R. Gaither* for the appellant.

*Mr. E. H. Thomas* and *Mr. J. B. Archer, Jr.,* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The errors assigned by plaintiff are as follows:

"1. That the lower court erred in vacating its decree in favor of appellant (plaintiff below) and making a final decree in favor of appellee.

"2. That the court below erred in holding that the heirs were indispensable parties, and that, for this reason, its decree in favor of complainant was erroneous."

It will be observed that in the decree appealed from, the court dismissed the bill of plaintiff on the ground *alone* that the heirs were not made parties, and that the executor had no power to execute a deed for the land in controversy.

The material part of the will of all, under which plaintiff acquires his authority to act, reads as follows: "I direct, authorize and empower Dr. Lewis A. Griffith, my executor herein named, to have full and complete power and authority over my entire estate real, personal and mixed of every kind and description and wherever being or situate, and I hereby further direct, authorize and empower him the said Lewis A. Griffith my executor to sell my real estate of which I may die seised and possessed at the time of my death wherever the said real estate may be situate, at public sale after one month's notice by due publication of said sale and of the time, place and manner of said sale, the said real estate to be sold upon such terms and conditions as my executor shall deem proper and expedient." The testator then devises the proceeds derived from the sale of his real and personal property to various persons and charities named in the will.

It is urged by counsel for plaintiff that, under this provision

of the will, the legal title to all the estate of which Ball died seised passed to the plaintiff as executor. We are impressed with the force of this contention. No part of the real estate of Ball was devised to his heirs. The legal title to the property belonging to the estate of Ball never passed to his heirs. What passed to the devisees under the will was the proceeds that should be derived from the sale of his property, real and personal. The real estate not only passed to the executor, but minute directions were given as to its disposition. Where such trusts and powers are vested in an executor, as appear from the terms of the will in question, the legal estate passes to the executor, and not to the heirs. The trust would be an empty and impotent one if, after vesting in the trustee the power to sell, under specific directions as to how the sale shall be conducted and the proceeds distributed, no power is vested in the trustee to pass title. Such is not the law. It has been held by this court in the case of *Rathbone* v. *Hamilton,* 4 App. D. C. 475, that, where the will directed the executor to sell the real and personal estate and distribute the proceeds in a certain manner, the legal estate vested in the executor by implication. The court, in its opinion, said: "It has been contended by the plaintiff here, the present appellant, that, even assuming that Mrs. Elkin had power to dispose of the property by will, the executor named in the will had no power of sale, and that the sale made by him, therefore, was simply void. But in this we do not agree. If the right to make the devise of the estate existed, the testatrix directed her property, real and personal, to be sold; and, after deducting funeral and other expenses, she directed how the proceeds of the sale should be distributed and paid out. The making of this distribution was a proper duty of the executor; and it is clear, we think, that the executor named in the will would have power to sell and convey the real estate, as he would have of the personal estate, raised by necessary implication. This would seem to be the settled construction of similar devises or directions to sell without express power conferred. *Magruder* v. *Peter,* 11 Gill & J. 217; *Peter* v. *Beverly,* 10 Pet. 532, 9 L. ed. 522; *Taylor* v. *Benham,* 5 How. 233." Thus, it

has been held in this jurisdiction that, even where no authority was conferred upon the executor by the terms of the will to convey the real estate, where the will provided that it should be sold and the proceeds distributed by the executor, the power of the executor to convey will be implied. It seems to be well settled that such authority may arise by implication, when necessary to properly execute the conditions of a trust. In *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458, 18 L. ed. 869, the court said: "When a trust has been created, it is to be held large enough to enable the trustee to accomplish the objects of its creation. If a fee-simple estate be necessary, it will be held to exist though no words of limitation be found in the instrument by which the title was passed to the trustee, and the estate created." The rule is well expressed in 2 Jarman on Wills, 156: "Trustees take exactly the estate which the purposes of the trust require; and the question is not whether the testator has used words of limitation, or expressions adequate to carry an estate of inheritance, but whether the exigencies of the trust demand the fee simple, or can be satisfied by any, and what, less estate." In the case at bar the directions to the executor to sell and dispose of the real estate are most explicit; and, while the will does not in terms confer upon the plaintiff, as executor, the power to convey the real estate, the power to sell and distribute the proceeds implies the power to convey, in order that the proceeds may become available for distribution under the will.

This suit was brought by the executor and former agent of the decedent. The land is in Maryland, and it is a Maryland contract. The laws of that state must govern in ascertaining the rights of the parties. Sec. 105, art. 93, of the Maryland Code provides, in part: "Executors and administrators shall have full power to commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted, except actions of slander." A similar provision is contained in sec. 327 of the Code of the District of Columbia. [31 Stat. at L. 1241, chap. 854.] Sec. 81, art. 93, Code of Maryland, provides: "The executor or administrator, including the administrator *de*

*bonis non,* of a person who shall have made sale of real estate, and have died before receiving the purchase money, or conveying the same, may convey said real estate to the purchaser; and his deed shall be good and valid in law, and shall convey all the right, title, claim, and interest of such deceased person in such real estate as effectually as the deed of the party so dying would have conveyed the same; Provided, the administrator of the person so dying shall satisfy the Orphans' Court granting him administration that the purchaser has paid the full amount of the purchase money." The above statutes of Maryland, applicable to this case, invest an executor with full power to bring and prosecute any personal action, either at law or in equity, that the testator could have commenced and prosecuted. They also authorize an executor to bring an action to enforce the specific performance of a contract for the sale of real estate, made by the testator during his lifetime, and to execute a conveyance that will pass the legal title to such real estate. The statutes contain no provision for the joining of the heirs as parties plaintiff in such an action, but declare in express terms that the executor shall bring personal actions in his own name.

The action here is one *in personam,* and was properly brought in this District, where defendant resides, and where personal service could be secured. In *Hart* v. *Sansom,* 110 U. S. 151, 28 L. ed. 101, the court said: "Generally, if not universally, equity jurisdiction is exercised *in personam* and not *in rem;* and depends upon the control of the court over the parties, by reason of their presence or residence, and not upon the place where the land lies in regard to which relief is sought. Upon a bill for the removal of a cloud upon title, as upon a bill for the specific performance of an agreement to convey, the decree, unless otherwise expressly provided by statute, is clearly not a judgment *in rem,* establishing a title in land, but operates *in personam* only, by restraining the defendant from asserting his claim, and directing him to deliver up his deed to be canceled, or to execute a release to the plaintiff. Langdell, Eq. Pl. 2d ed., secs. 43, 184; *Massie* v. *Watts,* 6 Cranch, 148, 3 L. ed. 181; *Orton* v. *Smith,* 18 How. 263, 15 L. ed. 393; *Vandever* v. *Free-*

*man,* 20 Tex. 334, 70 Am. Dec. 391." The same rule was announced by this court in *Stone* v. *Fowlkes,* 29 App. D. C. 379.

We are of the opinion that, as to the particular part of the estate of Ball involving the land in question, the sale effected a conversion, and thereafter Ball held the land as trustee for defendant; that, upon the execution of the contract, Ball's interest, as represented by the unpaid balance of the purchase price, became personalty, or a chose in action, and passed to the plaintiff executor as such. The $500 cash payment was, by the express language of the contract, a part of the purchase price. Ball retained possession to secure the payment of the balance of one half of the purchase price before executing a formal conveyance to the defendant. Under the sale, the land became the property of the defendant, and the agreed purchase price became the property of Ball. In equity, Ball held the land as trustee for defendant, and defendant held the purchase price as trustee for Ball. If the contract had been performed before Ball's death, the purchase price, with the securities for the deferred payments, would have passed as personalty to Ball's representative. Ball died before the date for performance arrived. Hence, the contract, a mere chose in action, passed to plaintiff, as executor. Defendant, under the contract, is now bound to turn over the purchase price to plaintiff as the personal representative of the vendor, and plaintiff is bound to pass to defendant the legal title to the land, which was held in trust for him by Ball until his death, and since that time by plaintiff, as Ball's personal representative. In the case of *Lewis* v. *Hawkins,* 23 Wall. 119, 23 L. ed. 113, where Hawkins purchased certain lands from Lewis, giving his promissory notes payable at a future date, and Lewis, in return, executed a bond for a deed, the court said: "Upon the execution of the notes and the title bond between Lewis and Hawkins, Lewis held the legal title as trustee for Hawkins; and Hawkins was a trustee for Lewis as to the purchase money. Hawkins was *cestui que trust* as to the former and Lewis as to the latter. The seller, under such circumstances, has a vendor's lien, which is certainly not impaired by withholding the conveyance. The equitable estate of

the vendee is alienable, descendible, and devisable in like manner
as real estate held by a legal title. The securities for the pur-
chase money are personalty, and, in the event of the death of the
vendor, go to his personal representative." The rule of law, ap-
plicable where notes and a bond were exchanged to secure ulti-
mate performance, will apply with equal force to a contract be-
tween the parties for the same purpose. In other words, a con-
tract of sale of land converts the estate of the decedent into per-
sonalty, over which the personal representatives have full con-
trol. *Longwell* v. *Bentley,* 23 Pa. 99.

It is urged by counsel for defendant that the contract was not
ratified by Ball in the manner provided for in the power of at-
torney from Ball to plaintiff. The power of attorney, after ap-
pointing plaintiff as Ball's agent to negotiate the sale of the land
in question, says: "I also agree to sign the contract in writing
ratifying and approving of the sale to be made of the said real
estate, provided the sum of $400 be paid to me." Instead of
signing the contract, Ball ratified the sale by the following in-
strument in writing:

June 19, 1903.

I, Alfred W. Ball, having received from my duly authorized
agent and attorney, Dr. L. A. Griffith, the sum of four hundred
dollars, do hereby ratify and confirm the sale made by him to
W. W. Stewart of my real estate near Meadows, Pr. Geo. county,
Md. This is with the understanding that, if said sale is con-
summated, and one half of the purchase money be paid cash,
that Dr. L. A. Griffith, my agent and attorney, shall pay out
of his commission, one half of the cost of surveying and attor-
ney's fee, the other half by W. W. Stewart; otherwise I am to
pay the cost of surveying and attorney's fees.

Alfred W. Ball.

With this provision in the power of attorney, ratification by
Ball became necessary in order to make the conditions of the
contract binding upon him. It is not clear just how defendant
can avail himself of the failure of Ball to sign the contract as a

defense, when Ball not only ratified the contract by the above instrument, but is here affirming it by his legal representative. The ratification by a separate instrument in writing has the same binding effect against Ball as his signature to the contract itself would have had. Since, therefore, this provision in the power of attorney was inserted for the purpose alone of connecting Ball with the agreement in such way that the contract could be enforced against him, and as no effort has been made, either by Ball or his legal representative, to evade the contract, the ratification is sufficient.

It is also contended by counsel for defendant that the contract was an optional one, and cannot be enforced for lack of mutuality. It contains the following provision: "In case the remainder of the first half of the purchase price be not paid on the 7th day of November, then the $500 so paid to the said Griffith is to be forfeited, and the contract of sale and conveyance to be null and void and of no effect, otherwise remain and be in full force." It is insisted that defendant had no contract with either Griffith or Ball, unless he elected to pay the balance of one half of the purchase price on the day named in the contract. It is well settled that, when the amount paid in cash is stipulated to apply on the purchase price, and no specific provision appears authorizing the vendee to elect to forfeit the contract, a provision, such as the above, will permit the vendor, upon the failure of the vendee to comply with his agreement, to declare a forfeiture; but no such right attaches to the vendee. In *Hazleton* v. *Le Duc,* 10 App. D. C. 379, this court, considering a contract similar to the one here under consideration, said: "The contract in this case recites that appellee's attorney, who signed it, had received of the defendant 'the sum of $200, on account of the purchase money,' of the real estate in question, 'this day sold to him (appellant) by me (appellee).' The terms of the sale are set forth, and there is added 'terms of sale to be complied with in fifteen days or deposit will be forfeited.' Immediately following the signature of appellee by his attorney, and on the same paper, is the following undertaking, signed by appellant: 'I agree to make the above-mentioned purchase on terms as stated.' The only construction

that can reasonably be put upon this language is that the parties intended and understood that there was a then present sale of the property; that appellee agreed to sell and appellant agreed to purchase on the terms mentioned in the contract. The $200 were not paid to buy an option to purchase within fifteen days, but as a part of the purchase money for the property then purchased by appellant. To construe this instrument to be an option to purchase would require the rejection of the language used in it, and the substitution therefor of words of different meaning. Had the memorandum signed by the appellant read, 'I agree to elect to make the above-mentioned purchase on terms as stated within fifteen days, or forfeit the deposit made,' it would have been an option to purchase. The memorandum which he did sign is of a very different signification from the one supposed. * * * These words were inserted for the benefit of the vendor, and gave him the option, if the terms of the sale should not be complied with in fifteen days, of treating the contract as void and retaining the $200, or treat it as valid and sue for the balance of the purchase money, or for such damages as he might suffer from a breach of the contract by the vendee." It seems to be the well-settled rule that, where a clause is inserted in a contract, such as the one here in question, it is placed there for the benefit of the vendor, and affords him the option, either of declaring the contract forfeited upon failure to comply with its terms by the vendee, or to enforce the contract. Fry, Spec. Perf. sec. 118; *Dana* v. *St. Paul Invest. Co.* 42 Minn. 194, 44 N. W. 55; *Dooley* v. *Watson,* 1 Gray, 415; *Wilcoxson* v. *Stitt,* 65 Cal. 596, 52 Am. Rep. 310, 4 Pac. 629.

In *Mason* v. *Caldwell,* 10 Ill. 196, 48 Am. Dec. 330, where suit was brought for the specific performance of a contract to convey real estate, the bond for the conveyance contained the following clause: "But, should the said John R. Caldwell, or his assignee, fail to pay the said sum of money, specified in said notes, within ten days after the same become due, he hereby forfeits all claim to said lots, and all moneys paid thereon; and this bond, in such event, shall be void, both in law and equity, and the title to said lots shall continue in the original proprietor, as if no sale had

been made." The court, in its opinion, said: "The defendant contends that he can take advantage of this clause, and, because he did not pay the money as he had agreed to do, he is exonerated from paying it at all. It is argued, that because the obligee, in the event of nonpayment, may treat the bond as determined, mutuality requires that the obligor should have the same privilege. This argument refutes itself. It is as much a *felo de se,* as it would make the bond. To admit the defendant's position is to leave everything in his own hands. It allows him to defeat, or make the bond operative, as may best subserve his interest, without any discretion on the part of the obligee. It converts the bond into a naked proposition absolutely binding on the seller, but which the purchaser may accept or reject by the payment or nonpayment of the money. By thus putting the entire control in the hands of the latter, all mutuality is destroyed. It was the undoubted intention of both parties, when they inserted this clause, to provide a penalty to insure a prompt performance by the purchaser. By performance he leaves no discretion in the hands of the obligee, but has a right to enforce the bond, while, if he does not, he agrees to leave it optional with the other party to avoid the contract or not. Here was a real mutuality; for the purchaser had the first discretion, and, if he placed himself in the power of the other party, it was by his own voluntary neglect to pay the money, as he had bound himself to do, and it was but a just penalty for violating his obligation."

In the case at bar the option clearly was one running in favor of the vendor. There was no lack of mutuality. Defendant imposed upon himself the duty of making payment as he had agreed to do. Compliance on his part vested him with power to compel specific performance had plaintiff failed to respond to the obligations imposed upon him by the contract. The contract was one for the purchase of real estate. Defendant was in position to prevent plaintiff from taking advantage of the option by making payment and executing the notes and mortgage, as he had agreed to do. He cannot, however, come into a court of equity and justify his own default by assuming to himself a right that belonged exclusively to the plaintiff. No doubt, if plaintiff had

elected to have availed himself of the option, it would have been most satisfactory to defendant, as it would have relieved him of any liability for his own default; but, since plaintiff is here insisting upon a full performance of the contract, defendant cannot avail himself of the discarded option of plaintiff to defeat the action, which plaintiff, in the exercise of his rights, elected to bring.

It is urged that time is of the essence of this contract, and, as plaintiff was not in position to perform his part of the agreement on November 7, 1903, he is thereby estopped from bringing an action to compel specific performance in the part of the defendant.

Time may be of the essence of a contract to purchase real estate. It was of the essence of this contract. If defendant had appeared on the 7th of November and tendered performance, and plaintiff had failed to comply with the terms of the contract within such reasonable time as he could, owing to the unexpected contingency arising from the death of Ball, he would have a different standing in a court of equity. On the contrary, the evidence discloses that defendant not only made no effort to comply with his agreement, but he admits that, at that time, he had abandoned all intention of complying with its terms. Under these circumstances, he is not in position now to come into a court of equity and defend against the enforcement of his contract on the mere presumption that, owing to the contingency arising from Ball's death, of which he admits he had no knowledge on November 7, 1903, plaintiff was not in position to carry out his part of the agreement. Counsel for defendant rely upon the rule announced by the Supreme Court in *Rutland Marble Co.* v. *Ripley,* 10 Wall. 339, 19 L. ed. 955, where the court said: "When, from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former." Defendant might be in position to invoke this rule had he tendered performance and found

plaintiff not only unprepared to carry out his part of the agreement, but unable to do so. But that is not this case. One party cannot refuse or fail to do his part at the proper time, and defend against the action of the other party by proving contingencies that might have prevented the other party from complying with his part of the agreement. One party cannot make his own negligence the basis for defeating the other party. When one party has been negligent in performing his part of the agreement, he is estopped from coming into a court of equity and basing his defense upon contingencies that might have prevented the other party from keeping his agreement had he been called upon to do so.

Assuming, however, that plaintiff was not in a position on November 7, 1903, by reason of the death of Ball, to carry out his part of the agreement, fortuitous circumstances of his kind, over which plaintiff had no control, will not defeat the right of recovery, or the enforcement of specific performance. In the case of *Brown* v. *Slee,* 103 U. S. 828, 26 L. ed. 618, where the court had under consideration a contract providing for the purchase of certain land within a given date, the court said: "It is claimed on the part of the appellants, however, that to enable the executors to recover they must prove 'both an election to sell and the delivery or tender of a deed on the day fixed for performance.' As we have already shown, it needed no tender of a deed on the day to require Brown to repurchase. It was enough if, before the expiration of the time, the executors made their election that he should do so, and signified it to him in proper form. That being done, the rights of the parties respectively under the contract were fixed. Brown became bound to repurchase and pay the money, and the executors to receive the money and reconvey. Either party could then require the other to perform, and neither could insist on the default of the other, so long as he was himself behind in his own performance. Brown could not demand a deed until he tendered the money, and the executors could not require the money until they had offered a deed. Neither party offered to perform on the day, and, therefore, one was as much in default as the other. Such being the

case, either party, after relieving himself from his own default by performance or an offer to perform, could require the other to perform within a reasonable time. Neither could insist that the other had lost his rights under the contract until he had himself done what he was bound to do. The failure of both parties to perform on the day was equivalent to a waiver by each of the default of the other. The executors did offer to perform within a reasonable time after the day, and we think are entitled to recover." This, we think, applies directly to the case at bar. While both parties failed to perform on the 7th day of November, 1903, the failure of each "was equivalent to a waiver by each of the default of the other." Plaintiff, owing to the contingency caused by the death of Ball, was unable to perform his part of the agreement. As soon as possible, and within a reasonable time, he secured proper authority, and tendered performance, and, under these conditions, is entitled to an enforcement of the contract.

It is contended by defendant that the real purchaser in this case was the Maryland Oil Company, and that defendant in making the contract was acting as its agent. There is a conflict in the evidence on this point. We think the defendant has failed to establish the fact that he disclosed his agency, if one existed, either to plaintiff or Ball at the time the contract was made. It is admitted that, about the time when the payment was to be made, November 7, 1903, when defendant had decided to abandon his contract, he notified plaintiff that he was not the real purchaser, but only the agent of the oil company. This was too late. It was the duty of the defendant to have disclosed his agency at the time the contract was made. He could not make a contract of which he could avail himself if it proved profitable, and, by concealing his agency, disclaim if it proved unprofitable. The trial court found against this contention of the defendant, and we agree with that conclusion. It is supported by the evidence.

A number of other objections of minor importance were advanced by counsel for defendant, which we have not deemed of sufficient importance to consider at length. Inasmuch as the supreme court of the District, in its original decree, found gen-

erally for the plaintiff upon all the issues involved in the case, and, upon rehearing, vacated that decree on the ground alone of defect of parties plaintiff, the two decrees, when considered together, are equivalent to a finding for the plaintiff on the facts. We have carefully examined the evidence disclosed in a voluminous record, and agree with the conclusion reached by the lower court. For the error committed in granting a rehearing upon the sole ground that the heirs of Ball should have been made parties plaintiff, the judgment is reversed, with costs, and the cause remanded with instructions to enter judgment for the plaintiff, as prayed for in the bill.                *Reversed.*

An appeal by the appellee to the Supreme Court of the United States was allowed April 7, 1908.